UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, <br>       Plaintiff, <br><br> v. <br><br> NELES-JAMESBURY, INC., <br>       Defendant. | CIVIL ACTION <br> NO. 21-11767-TSH |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS**
March 28, 2023

**HILLMAN, S.D.J.**

Plaintiff, the Continental Insurance Company ("Plaintiff" or "Continental") filed suit against Defendant, Neles-Jamesbury, Inc. ("Defendant" or "Neles-Jamesbury") to obtain declaratory relief regarding their duty to defend Neles-Jamesbury for underlying asbestos-related bodily injury claims ("Underlying Claims"). Neles-Jamesbury counterclaimed for declaratory relief related to Continental's obligations under a 2007 settlement agreement ("2007 Cost Sharing Agreement" or "Agreement") and for damages for Continental's alleged use of deceptive practices which breach the covenant of good faith and fair dealing. Neles-Jamesbury has moved for partial judgment on the pleadings under Fed. R. Civ. Pro. 12(c) asking that the Court reject Continental's contention that it no longer needs to pay a share of defense costs to Neles-Jamesbury and to affirm that the 2007 Cost Sharing Agreement was a final resolution of Continental's duties with respect to the asbestos claims. For the following reasons, Neles-Jamesbury's motion is **granted**.

## Background

Continental is an insurance company organized under the law of Pennsylvania with a principal place of business in Chicago, Illinois. Neles-Jamesbury is a corporation organized in 2009 under the laws of the State of Delaware, with a principal place of business in Shrewsbury, Massachusetts and is the successor by merger to the liabilities of Jamesbury Corp. and Neles, Inc. In January of 1990, Neles, Inc. merged into Jamesbury Corp. after Neles, Inc. acquired Jamesbury Corp; thereafter, Jamesbury Corp. changed its name to Neles-Jamesbury, Inc. At the time that Neles, Inc. acquired Jamesbury Corp., Neles, Inc. and Jamesbury Corp. were both in the business of manufacturing and selling valves. In December of 2009, Neles-Jamesbury, Inc., a Massachusetts corporation, merged into its present iteration of Neles-Jamesbury, Inc., a Delaware corporation.

In 1987, Continental issued two primary comprehensive general liability insurance policies to Neles, Inc., for the policy periods of April 24, 1986 to April 24, 1987, and April 24, 1987 to April 24, 1988, respectively (hereinafter, "the Policies"). Since that time, Neles-Jamesbury has been involved in numerous lawsuits that allege bodily injury resulting from asbestos exposure. Due to the continuing question of whether these policies created duties for Continental, the parties' entered into the 2007 Cost Sharing Agreement, which served to clarify and define their respective obligations and coverage in the lawsuits.

In its Complaint and Answer, Continental admits that for the last 15 years, it has been obligated to contribute a negotiated share of Neles-Jamesbury's defense costs for the Asbestos Claims under the terms of the Agreement. Continental does not dispute that the Agreement is in effect and enforceable. Continental admits that, subject to the terms of the Agreement, it is

obligated to contribute an agreed-upon share of reasonable and necessary defense costs until the Agreement is terminated and the limits of the Policies have not been exhausted.

Continental contends it no longer has the obligation to defend Neles-Jamesbury because it never insured Neles-Jamesbury or Jamesbury Corporation. Continental asserts that it only insured Neles, Inc which it alleges is an "NJI predecessor company" unrelated to Jamesbury Corp. Continental also argues that it may in fact terminate the Agreement because it reserved that right in the Agreement itself. Neles-Jamesbury asserts that the 2007 Cost Sharing Agreement is a binding and enforceable agreement between Continental and Neles-Jamesbury, that it governs Continental's obligations for defense costs for the Asbestos Claims and that Continental has improperly attempted to terminate the Agreement.

## **Standard of Review**

This Court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Thus, the court views "the facts contained in the pleadings in the light most favorable to the party opposing the motion ... and draw[s] all reasonable inferences in [that party's] favor." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). Dismissal is only appropriate if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a "plausible entitlement to relief." *Kimmel & Silverman, P.C. v. Porro*, 969 F.Supp. 2d 46, 49-50 (D.Mass. 2013) (*citing Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007)).

To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be

plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556). It is proper for a court to make a judgment on the pleadings when the complaint fails to show a plausible right to relief. *See Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 49 (1st Cir. 2019).

A motion for judgement on the pleadings can be filed "[a]fter the pleadings are closed— but early enough not to delay trial." Fed. R. Civ. P. 12(c). A judge should only grant this motion if material facts are not disputed and clearly establish that the movant is entitled to a favorable judgement. *Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir. 2007); *Britt v. Colvin*, 125 F. Supp. 3d 349, 357 (D.Mass. 2015). In analyzing such facts, the court "must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor.*" Feliciano v. State of Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998).

## Discussion

*Choice of Law*

There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. In such a case, "[i]t is axiomatic that state substantive law must be applied by a federal court sitting in diversity jurisdiction." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004). There is no choice of law clause in the Agreement, but a choice of law analysis is not necessary in this case. Forum law is applicable where there is no conflict between the substantive laws of the interested jurisdictions. *Id*. Continental contends that New York substantive law should apply but cites to no conflict of law issue. The contract principles relevant here are generally uniform across jurisdictions, and thus

no conflict of law issue is presented for purposes of this motion. *See Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004) (forum law applies absent an actual conflict between the substantive laws of the interested jurisdictions); *Steinke v. Sungard Financial Sys., Inc.*, 121 F.3d 763, 775 (1st Cir., 1997) (court need not resolve choice of law issue when "the outcome is the same under the substantive law of either jurisdiction") (*quoting Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir., 1993)). *Celanese Corp. v. OneBeacon Am. Ins. Co.*, 2008 WL 5784444, at *6 (Mass. Super. Ct. Dec. 29, 2008) (holding that choice of law analysis was unnecessary where there "is no meaningful disparity" between forum law and the law of another potentially applicable jurisdiction on the relevant issue).

*Consideration of the Agreement for a 12(c) Motion*

In evaluating a Rule 12(c) motion, a court can "consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (omission and alteration in the original) (*quoting Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

Continental cites *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.* in support of its argument that a document outside the pleadings can only be considered when "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon – [the] document." 267 F. 3d 30, 34 (1st Cir. 2001) (*quoting Beddall v. State St. Bank & Trust Co.*, 137 F. 3d 12, 17 (1st Cir. 1998)). In that case, the appellants argued that a 1998 settlement agreement was improperly considered with respect to a Rule 12(b)(6) motion. *Id.* at 33. The court rejected that argument because, *inter alia*, "liability under the complaint depends directly upon [the terms of] the 1998 Settlement Agreement," and there was no dispute as to the authenticity of the

5

agreement. *Id.* at 34. The court went on to hold that those conditions being met *allows* them to review the disputed documents. *Id.* (emphasis added). The court's use of the permissive language of "allows" in *Alternative Energy* supports consideration of the Agreement here. (Docket No. 42, at 8.). Where declaratory relief cannot be decided without analyzing the Agreement, the Court will consider the Agreement for purposes of this motion. *Curran*, 509 F.3d at 43.

*Duty to Defend*

Under Massachusetts law, "[a] settlement agreement is a contract and its enforceability is determined by applying general contract law." *Sparrow v. Demonico,* 461 Mass. 322, 327, 960 N.E.2d 296 (2012) (citation omitted). "Contract interpretation questions … are ordinarily questions of law for a court [.]" *Nadherny v. Roseland Prop. Co., Inc*., 390 F.3d 44, 48 (1st Cir. 2004). In interpreting a contract, a court seeks to give "effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 224-25, 418 N.E.2d 597 (1981). In addition, a court "construe[s] a contract as a whole, so as to give reasonable effect to each of its provisions." *Nutter & Co.*, 478 Mass. at 669, (internal quotation omitted). A court must interpret a contract in accordance with its ordinary and plain meaning. *See Balles v. Babcock Power Inc*., 476 Mass. 565, 571, 70 N.E.3d 905 (2017).

The Court will begin with the language of the Agreement. As is common, the preliminary "whereas" clauses in an agreement signal the parties' intent as to what the Agreement was, and was not, to accomplish:

> I. **RECITALS**
>
>   A.  WHEREAS, one or more lawsuits ("Asbestos Claims") have been filed against Neles-Jamesbury, Inc. and/or Neles Inc. ("Neles-Jamesbury") by claimants in which remuneration is sought from Neles-Jamesbury based on the claimants' allegations of bodily injury as a result of exposure to asbestos-

        containing products, including products allegedly manufactured, sold, handled or distributed by Neles-Jamesbury;

B. WHEREAS, Continental issued or is alleged to have issued liability insurance policies to Neles Inc. (a predecessor company to Neles-Jamesbury), which are specified on Exhibit "A" to this Agreement; and

C. WHEREAS, Continental does not agree on the question of which, if any, of the liability policies allegedly issued in favor of Neles Inc., are obligated to provide a defense to Neles-Jamesbury for the Asbestos Claims; and

D. WHEREAS, Continental wishes to avoid the expense and uncertainties of litigation concerning its defense obligations with respect to the Asbestos Claims and Continental believes it is in its best interest to enter into this Agreement to formalize the procedures, rights, and responsibilities with respect to the administration and defense of the Asbestos Claims;

( … )

<u>Agreement</u>, Section I, ¶ A-D.

Continental takes the position that it has no duty to defend Neles-Jamesbury under the Agreement because its Policies only covered Neles, Inc. and that if it did have such a duty to Neles-Jamesbury, the duty has been terminated. It is Continental's position that the Agreement permits termination by virtue of a prior correspondence with Neles-Jamesbury, and the incorporation into the cost-share agreement of that prior correspondence with its reservation of rights in the Agreement. Neither the terms of the Agreement nor the law supports Continental's view.

It is clear from the language in the Recitals that Continental is defining its position that, while it is not agreeing whether or not the Policies obligate them to defend Neles-Jamesbury (*Id*., Section I, B,C), Continental nonetheless entered into the Agreement with Neles-Jamesbury following "arm's length settlement negotiations between the Parties regarding a compromise of disputed claims." (*Id*., Section XIV, A).  Also clear from this language is that Continental entered into the Agreement to avoid litigation. The Agreement states three times that the parties,

7

including Continental "waive[] and forever relinquish[] all" of its contribution rights against other insurers of Neles-Jamesbury," (*Id*., Section XII(A), (B)). and that Continental "wishes to avoid the expense and uncertainties of litigation concerning its defense obligations." (Id., Section I(D)). These assertions further underscore the final nature of this Agreement and the parties' mutual interest in avoiding the cost and uncertainty of litigation.

While not binding on the Court, the *Celanese* case is instructive. In *Celanese*, the insurer, OneBeacon and insured, Celanese, entered into cost sharing agreements whereby the insured attempted to exit the agreements and go back to the original policy agreements by relying on a general reservations clause – just as Continental is attempting to do here. *See* 2008 WL 5784444. Likewise, the cost sharing agreements in that case were intended to resolve the disputes between the various parties to avoid litigation. *Id.* at *1. The court ultimately decided that "the language of the agreement itself, including the statements of mutual understanding and intention in the preliminary "whereas" clauses, [showed] that the 1998 agreement was intended to provide the sole contractual mechanism by which Celanese was to pay defense costs for the specific claims listed…" *Id.* at *3.

Continental attempts to differentiate *Celanese* by arguing that it did not involve an insurer seeking a declaration that it had to no duty to defend. That the parties in both cases tried to avoid a settlement agreement through litigation, primarily relying on a reservation clause remains a common factor. Furthermore, the *Celanese* court found that because the agreement indicated that Celanese reserved rights which were not already resolved in the Agreement, this implicitly admitted that the Agreement was a "final and binding settlement as to *something*." (emphasis in original). *Id.* at *6. This admission conceded that the "general reservations of rights provisions do not apply to matters resolved under the agreements, and that the agreements are

8

enforceable contracts, not 'voluntary,' as to listed claims." *Id.*; *see also James B. Nutter & Co. v. Est. of Murphy*, 478 Mass. 664, 669, 88 N.E. 3d 1133 (2018) (finding that reservation of rights provisions are to be read in the context of the entire agreement and in a way that effect is given to the parties' intentions).

Section IX of the Agreement makes clear that, "Continental shall have the responsibility for its share of defense costs incurred up to the date payment is issued that exhausts the indemnity limits." Furthermore, as the court in *Claudo-De Leon v. Sistema Univ. Ana G. Mendez* points out, "it is axiomatic that the word 'shall' has a mandatory connotation." 775 F.3d 41, 46-47 (1st Cir. 2014). Also significant is Continental's admission in their Complaint that "subject to the terms of the Agreement, it is obligated to contribute an agreed-upon share of reasonable and necessary defense costs until the Agreement is terminated." By admitting that termination is needed to assert their claims, they are essentially acknowledging that their reservation of rights did not include the claims in their complaint. If they did reserve those rights, termination would not be needed. This further supports that the Agreement was a binding and final settlement, and Continental has a duty to participate in the defense of Neles-Jamesbury.

The Agreement is clear that Continental is required to pay a fixed share of defense in "Asbestos Claims," defined to include lawsuits against Neles-Jamesbury.

> [E]ach asbestos claim or lawsuit filed against Neles-Jamesbury
> based on allegation(s) that the person sustained bodily injury,
> sickness, disease, or death as the result of his/her alleged exposure
> to asbestos-containing products allegedly manufactured, sold,
> handled, or distributed by Neles-Jamesbury.

Next, Continental relies on section X(D) of the Agreement to argue that it reserved its right to incorporate prior correspondence into the current Agreement and that it reserved its right to withdraw or terminate the Agreement in that correspondence.

9

> X.     RESERVATION OF RIGHTS
>
> D. The Parties acknowledge that Continental's participation in this Agreement is subject to all reservations of rights, disclaimers and requests for information which have been exchanged between Continental and Neles-Jamesbury to date. Additionally, with respect to future claims which are handled pursuant to this Agreement, Neles-Jamesbury agrees that except where expressly advised by Continental, Continental' coverage positions as set forth in coverage letters pre-dating final execution of this Agreement shall also apply to such future Asbestos Claims.

Agreement, Section X(D).

Continental argues that the meaning of Section X(D) is "crystal clear" in that they are permitted to incorporate certain prior correspondence into the interpretation of the Agreement. The correspondence which they seek to incorporate took place in March of 2005, two years before the Agreement was finalized in September of 2007.

Continental's argument fails in several ways. The language of Section X(D) does not clearly convey that prior correspondence can be incorporated into the Agreement particularly in light of the fact that some prior correspondence is in conflict with terms of the Agreement. Continental argues in its memorandum that the "lack of any express or specific waiver of the claims Continental now asserts…dooms Neles Jamesbury's attempt to avoid Section X(B)'s general reservation of all rights not expressly or specifically waived." Continental misstates the language in the contract. Rather, the language of the contract in Section X(B) says:

> *Except as otherwise specifically provided in this Agreement*, the Parties expressly agree and understand that this agreement does not constitute a waiver of, and that the parties expressly reserve all rights and defenses that they may have against all persons and entities, including each other, with respect to the Asbestos Claims, including any defense based on lost policies. (emphasis added)

Agreement, at 11.

The first line of the clause is essential; it does not say that it "reserves all rights not expressly or specifically waived." Instead, it reserves those rights which are not already settled in

the Agreement and are outside the Agreement's scope -- a subtle but important difference. Those rights reserved may relate to "(i) Continental's obligations to pay indemnity coverage for the Asbestos Claims… (ii) Continental's obligations to cover Asbestos Claims under policies other than the two Insurance Policies… or (iii) any disputes about coverage for claims that are not Asbestos Claims." Therefore, Continental can only reserve rights regarding matters that are not resolved by the Agreement.

Perhaps most importantly, the Agreement contains an integration clause. Section XIV(A) states that the "Agreement supersedes any and all prior agreements and understandings, except as otherwise provided herein" and Section XV states, [t]his Agreement is the complete and entire Agreement of the Parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or by any subsequent oral agreements. This Agreement may be amended only by a written instrument executed by the Parties." Although an integration clause is not dispositive, "[g]enerally, contracting parties are understood to have included an integration clause in their written agreement with the intent 'to preclude the subsequent introduction of evidence of preliminary negotiations or side agreements.' *See Guldseth v. Fam. Med. Associates LLC*, 2021 WL 681913, at *4 (D.Mass. Feb. 22, 2021), *aff'd*, 45 F.4th 526 (1st Cir. 2022) (internal citations omitted).

Further, "[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable" *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994) (citation omitted). If Continental were allowed to incorporate prior evidence and essentially terminate at will, that would render multiple provisions of the contract superfluous e.g. the integration clause; Section X(B), which indicates

that certain matters are settled; and the expirations provisions clause, which addresses when Continental's duty will end.

Finally, policy considerations must be considered and further support upholding the Agreement. Massachusetts has shown a favorable attitude towards settlement agreements like the one in the instant case because they "hold people to the contracts they make and [] avoid costly and time-consuming litigation.'" *Hansen v. R.I.'s Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp.2d 311, 315 (D.Mass. 2013).

## **CONCLUSION**

For the foregoing reasons, Neles-Jamesbury's Motion for a Partial Judgement on the Pleadings (Docket No. 28) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES SENIOR DISTRICT JUDGE